THE CELTIC MONARCH.

THE SEA LION.

(District Court, W. D. Washington, N. D. January 21. 1910.)

Nos. 2,831, 2,836, 2,844.

1. COLLISION (§ 85*)—TUG AND TOW—LIABILITY OF TOW FOR COLLISION BE-
   TWEEN TUG AND ANOTHER VESSEL.

   The facts that a ship put to sea in tow of a tug in a fog, and with a
   towline of improper length, are not sufficient to charge her with fault
   for a collision between the tug and another vessel. where no facts are
   proved to show that it was proximately due to either of such alleged
   faults.

   [Ed. Note.—For other cases, see Collision, Dec. Dig. § 85.*]

2. ADMIRALTY (§ 28*)—JURISDICTION—MARITIME TORT.

   The owner of a vessel, which was libeled for collision. but adjudged
   without fault, cannot maintain a suit in rem in admiralty to recover for
   the cost and expense incurred by reason of such libel against a third ves-
   sel, which was in fact in fault for the collision.

   [Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 28.*

   Admiralty jurisdiction of actions for torts, see note to Campbell v. H.
   Hackfeld & Co., 62 C. C. A. 279.]

3. COLLISION (§ 82*)—FAULT—NAVIGATION IN FOG.

   It is unlawful in the navigation of a steam vessel to assume that an
   approaching steamer, which cannot be seen because of prevailing fog, is
   on any particular course, and to continue onward without reducing speed
   after the failure of the approaching vessel to respond to a passing sig-
   nal.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 170–174; Dec.
   Dig. § 82.*

   Collision rules, speed of steamers in fog, see note to The Niagara, 28
   C. C. A. 532.]

4. COLLISION (§ 83*)—STEAM VESSELS MEETING IN FOG—FAULT.

   A tug with a tow and a meeting steamer both *held* in fault for a colli-
   sion between them in a dense fog, for failing to reduce speed and sound
   alarm signals when they were aware that they were approaching each
   other, but neither could make out the other or her course because of the
   fog.

   [Ed. Note.—For other cases, see Collision, Dec. Dig. § 83.*]

In Admiralty. Suits by the Pacific Coast Company against the
ship Celtic Monarch and tug Sea Lion, and by the Celtic Monarch
Ship Company against the tug Sea Lion, with petition of the Ship-
owners' & Merchants' Tugboat Company for limitation of liability.
Decree against the Sea Lion and her claimant for her appraised value.

James B. Howe and C. H. Farrell, for libelant.

James M. Ashton, for Celtic Monarch Ship Co.

Hughes, McMicken, Dovell & Ramsey and Charles F. Munday, for
owners of the Sea Lion.

HANFORD, District Judge. On a summary hearing at an early
stage of the litigation between these parties, this court rendered a
decision in writing exonerating the ship Celtic Monarch from re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sponsibility, and now for the sake of brevity in the statement of the case, and because the opinion expressed therein is applicable to the case in its present condition, in so far as the Celtic Monarch is concerned, I will now quote that decision in extenso:

"This is a suit in rem against two vessels, viz., the steam tug Sea Lion and the British ship Celtic Monarch, jointly charged with liability for the destruction of the steamboat Mainlander by reason of negligence in the navigation of said tug and ship, resulting in a collision.

"The claimant of the Celtic Monarch has filed an answer to the amended libel, and the case has been brought on for a summary hearing, pursuant to a mandate, under local admiralty rule 35, requiring the libelant to show cause why the case should not be dismissed as to the ship, for manifest want of equity. The purpose of rule 35 is to avoid tedious and expensive litigation in cases in which it may be practicable to show, by indisputable proof, that the libelant has no just grounds for proceeding in rem, or to arrest a defendant in a suit in personam. I think that this is such a case as the rule contemplates, and that it may be finally disposed of in this summary proceeding resembling a motion for judgment on the pleadings in an action at law.

"The Celtic Monarch, with a full cargo on board, was being towed from Tacoma to the sea by the Sea Lion. The Mainlander was on her regular run from Bellingham to Seattle, and the collision occurred near West Point, in a dense fog. When informed of the near proximity of the Sea Lion by the fog signals, the Mainlander's captain first stopped her engines, and then reversed, and the Mainlander was backing when the Sea Lion struck her on the port side of her bow, cutting into her so deeply that she filled and sank in less than half an hour. The Celtic Monarch did not at any time come in contact with the Mainlander, but by prompt obedience to a signal from the tug, her helm was put hard astarboard, and she passed clear of both steamers, and thereby avoided doing damage which might have caused a more serious disaster.

"In the pleadings no specific fact is alleged constituting a fault on the part of the Celtic Monarch. The amended libel pleads negligence only in general terms, and as a general conclusion that the ship was in fault for starting on a voyage when the weather was foggy, and by negligence in steering and handling the vessels, and that the towline was not the proper length, without specifying whether it was too long or too short. The affirmative matter in the answer must be considered as true so far as the same is not in conflict with the allegations of the amended libel, and from all that is alleged, and not disputed, I must consider that it is a fact that the steam tug had the Celtic Monarch in charge, and that the officers of the ship did not have control of the tug's movements. Therefore the ship cannot be held liable for the accident unless, by reason of the fact that the tug was for the time being employed by the master or owners of the ship, the rule of respondeat superior may be applied. Conceding that it was negligence on the part of the master of the ship to proceed in the fog with an improper towline, neither the ship nor her master nor her owners are liable, unless the negligence specified was the direct or proximate cause of the injury. There is no rule of law which enjoins suspension of commerce during foggy weather, and in attempting to go to sea the Celtic Monarch was not guilty of a legal wrong, nor guilty of a legal wrong if the towline was either too long or too short, because neither the towline nor the ship was the instrument which inflicted the injury. If by reason of the towline the captain of the tug acted imprudently in maintaining an improper speed, his imprudence was the proximate cause of the accident, and the use of the towline was at most a remote cause.

"I have studied the cases cited by counsel on both sides, and it is my opinion that the rule to be drawn from all of them is that a ship is not liable as a guilty thing for an injury inflicted by a towboat not under control of the ship's officers, when the ship herself is not the instrument by which the injury was done, and there is no defect in the construction or equipment of the ship, and no fault in her own maneuvering contributing to the injury, and in such a case a suit in rem against the ship cannot be maintained to recover damages.

"Let a decree be entered, dismissing the case as to the Celtic Monarch, **with costs.**"

That decision was reversed by the Circuit Court of Appeals. See 138 Fed. 711, 71 C. C. A. 127. In deference to the decision of the Circuit Court of Appeals, the libelant has been given an opportunity to establish by proof the general, indefinite, and vague charges against the Celtic Monarch contained in its amended libel, but has failed to produce a scintilla of evidence tending to prove any act or omission on the part of the master, crew, or the ship itself, which in the slightest degree contributed to produce the disaster or to enhance the loss suffered by the libelant. It is unnecessary to reiterate what has been said in the foregoing opinion expressing the views of the court with respect to the rights and duties of ships in foggy weather and as to the irrelevancy of facts alleged which in no way contributed to the happening of the cause of damage.

The court again directs that a decree be entered, dismissing the suit against the Celtic Monarch, with costs.

The owner of the Celtic Monarch commenced an independent suit in rem against the tug Sea Lion, to recover compensation for the delay and expenses incidental to the prosecution of the suit against the ship, in its libel claiming that it was free from blame and that the pecuniary loss complained of was consequential to the collision between the two steamers for which the ship was not liable.

The alleged cause of action is a tort to which the Sea Lion, her owner, master, and crew, have no direct connection, being the personal act of the owner of the Mainlander, subsequent to the collision between the two steamers, and not a marine tort, for which a suit in rem can be maintained under maritime law. Therefore the court directs that a decree be entered, dismissing the case, with costs.

The owner of the Sea Lion and a tugboat company which employed her to tow the Celtic Monarch have joined in a petition for a limitation of liability and also contesting liability, alleging that the collision was a result of errors on the part of the Mainlander, and that the Sea Lion was in all respects seaworthy and completely manned and equipped for the service in which she was employed, and was entirely free from any fault contributing to the collision, and that any fault on the part of the Sea Lion which may be established was an error of navigation and without the knowledge or privity of the petitioners.

The court finds that mutual faults on the part of both steamers produced the collision. The Mainlander was clearly in fault for running at an excessive rate of speed in the dense fog prevailing, after she was informed of the approach and nearness of the Sea Lion burdened with her tow, and for porting her helm when the other vessel was not in sight and her exact position and course unknown, and for failure to give the alarm signal in response to the Sea Lion's passing signal, which indicated nonconcurrence in the minds of the commanding officers of the two vessels; the Mainlander's pilot intending a port to port passing and the other signaling to pass on the starboard hand. The master of the Sea Lion committed an inexcusable error in assuming that the Mainlander was steering the usual and proper course for a steamer entering Seattle harbor from the northward. It is unlawful, in the navigation of a steam vessel, to assume that an approaching steamer is being steered upon any particular course, when she is in-

visible by reason of prevailing fog, and continue onward without reducing speed after a failure of the approaching steamer to respond to a passing signal. The passing signal given by the Sea Lion was not a contributing cause of the collision; but the captain's error in assuming that he knew the course steered by the Mainlander undoubtedly caused him to neglect observance of the rules which required him to reduce speed and to sound an alarm, when the Mainlander's failure to answer his signal should have warned him of imminent danger.

The captain's error in assuming to locate the exact position of the Mainlander and determine her course, and his neglect to sound an alarm as required by the rules, and in continuing to run at full speed until the instant of the collision, are the faults chargeable to the Sea Lion; but the petitioners, being free from connivance or personal participation therein, are entitled to exemption from liability for any amount of damages in excess of the value of the tug.

The Sea Lion has been appraised at $22,000, and that amount is all there is available to compensate for the loss of the Mainlander, which was more than four times that amount. Except the owner of the Celtic Monarch, other parties have not intervened to claim a distribution of the fund. Therefore a decree will be entered in favor of the owner of the Mainlander for $22,000 and costs.